# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIM. NO. 06-60021-01-08** |
| **VERSUS** | * | **JUDGE MELANCON** |
| **JONATHAN WINTERS, ET. AL** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS

The defendants**,** Jesse Alfred and Richard Allen, have filed motions to dismiss the indictment pending herein. [Record Docs. 192 and 193]. All of the other defendants have adopted these motions. The government has filed an opposition. [Record Doc. 224]. For those reasons set out below, the undersigned recommends that the motions to dismiss be **granted**, and the indictment be **dismissed without prejudice**.

## PROCEDURAL HISTORY

The defendants were indicted on March 15, 2006 in a three-count indictment charging them with conspiring among themselves and with others, "known and unknown", to transport, into the Lafayette, Louisiana area, cocaine and cocaine base (crack) and to thereafter distribute those drugs. The indictment charges that the conspiracy began on January 1, 1991 and continued until February 14, 2006. [Record Doc. 1]. The defendants, at the time the indictment was returned, lived in the Lafayette area as well as outside the Lafayette area.

Even before all of the defendants had made their initial appearances in this Court, the government moved to continue the trial date, and further moved to certify the case as complex, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161, *et seq*. [Record Doc. 68]. On May 9, 2006, the court granted the motion to continue and further found that the continuance of the trial date served the ends of justice "because this delay outweighs the best interest of the public and the defendants to a speedy trial." The court additionally ordered the government to file, within sixty days, a motion to reset the case for trial. [Record Doc. 75].

On May 25, 2006, the defendant, James Joseph, moved the court to continue his trial date on the grounds that his trial was, at that time, still pending and the trial of the other defendants had been continued, and had not yet been reset. [Record Doc. 90]. That motion was granted by the court on May 30, 2006. In granting that motion, the court again made an "ends of justice" analysis, and found "that the ends of justice served by the granting of this continuance outweigh the best interest of the public and the defendant in a speedy trial said analysis pursuant to the provisions of 3161(h)(8)(A)." The court made this finding after considering the request of counsel for Joseph, who specifically argued that the continuance was made necessary by the complexity of the case, and further argued that the continuance was warranted pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv). [Record Doc. 91].

On July 6, 2006, the government moved the court to delay resetting the case for trial. The government, again, argued that the case was complex, that the defendants had been arrested both in and outside the State of Louisiana, that one defendant was still at large and that the discovery in the case was voluminous. [Record Doc. 95]. The court granted the motion and set a scheduling conference for October 18, 2006, at which time a trial date was to be selected. [Record Doc. 97].

Apparently, because not all defendants had yet been transported to this court, the scheduling conference actually occurred on December 13, 2006. At that time, trial was set to commence June 18, 2007; the pretrial conference was scheduled for May 16, 2007. [Record Doc. 145].

At the pretrial conference, the defendants, apparently, informed the court that the government had failed to comply with the order of the undersigned granting a bill of particulars, and ordering the government to provide the names of all unindicted co-conspirators who the government planned to call as witnesses, to the defendants.[1] The court also informed counsel that a status conference would be conducted with the court on June 18, 2007, at which time a new trial date would be selected. [Record Doc. 157].

---

[1] The Motion for Bill of Particulars was filed on May 4, 2006 by counsel for the defendant Zeno. [Record Doc. 72]. The Motion for Bill of Particulars was granted by the undersigned on June 21, 2006. The government was ordered to provide the names of those co-conspirators who the government intended to call as witnesses at trial. The government was ordered to make that disclosure as soon as it determined that an unindicted co-conspirator would be called as a witness, but, in any event, no later than twenty-one days before trial. [Record Doc. 93].

On May 22, 2007, the government filed a list of unindicted co-conspirators containing seventy-two names. [Record Doc. 159]. This list does not indicate which, if any, of the unindicted co-conspirators would testify at trial.

On June 18, 2007, at the status conference which was to set a trial date, the Court instead ordered the government to identify which of the seventy-two persons named as unindicted co-conspirators would testify at trial.[2] The government was also required to identify, as to each such potential witness, whether the witness was then, or had been in the past, incarcerated. The Government was also required to identify the dates of incarceration, the location where the witness was, or had been, incarcerated, a criminal history of each witness, and against which defendant each unindicted co-conspirator witness would testify. [Record Doc. 162]. No new trial date was set.

On December 17, 2007, based on the assumption that the government had complied with the Court's order, the undersigned set a status conference for January 31, 2008. It was the intention of the undersigned, at that conference, to set motion filing deadlines and deal with any unresolved discovery issues, with a view toward getting a date on which the case could be tried. [Record Doc. 176]. At that status conference, motion filing deadlines were set, the pretrial conference was set for September 24, 2008 and trial was set for October 14, 2008. [Record Doc. 179].

---

[2] This, of course, was the same order that the undersigned had entered on June 21, 2006. [Record Doc. 72].

On February 1, 2008, counsel for the defendant Zeno moved the court for a *James* hearing to determine, pretrial, the admissibility of hearsay declarations of the alleged co-conspirators. [Record Doc. 180]. All of the other defendants adopted Zeno's motion. [Record Doc. 188]. In a telephone conference held by the undersigned with counsel, on February 28, 2008, the *James* hearing was set for October 7, 2008, and the government was ordered to make specific disclosures, in a specific form, and to provide copies of those disclosures both to the undersigned and to Judge Melançon. [Record Doc. 198].

On February 25, 2008 counsel for the defendant Jessie Alfred filed a motion to dismiss the indictment. [Record Doc. 192]. On February 26, 2008, counsel for the defendant Richard Allen filed a motion to dismiss the indictment. [Record Doc. 193]. Those two motions to dismiss were subsequently adopted by the other defendants, and both Allen and Alfred adopted each other's motion to dismiss.

On April 17, 2008, the government opposed the motion to dismiss. [Record Doc. 224]. This Report and Recommendation follows.

## THE ARGUMENT OF THE PARTIES

The defendants move to dismiss the indictment alleging violations of their Sixth Amendment right to a speedy trial, the Speedy Trial Act (18 U.S.C. § 3161, *et seq*.) and Rule 48, Fed. R. Crim. P.

With regard to their argument that the Speedy Trial Act was violated, the defendants argue that the government never asked, and the court never provided, an "on

the record" hearing at which a determination of whether or not the periods of delay before trial were "excludable" under the Act.

Additionally, the defendants seem to argue that the failure of the government to comply with the order of the undersigned to disclose the identity of unindicted co-conspirators who would testify at trial, and the additional failure of the government to comply with Judge Melancon's order of June 18, 2007 (which required compliance by September 18, 2007) until February 15, 2008, warrants dismissal. The defendants further complain that the government's letter of February 15, 2008, which purports to comply with these orders albeit almost five months late, still does not comply with Judge Melançon's order of June 18.

The defendants argue that no defendant ever waived the Speedy Trial Act, no defendant filed a motion for continuance (which is factually incorrect), that the government has acknowledged violating at least one of the Court's orders to produce discovery and that the government, in filing its motions to continue, never asked for a contradictory, on the record, hearing.[3]

With regard to their Rule 48 motion, counsel argues that Rule 48 operates independently of the Speedy Trial Act and provides an alternate basis for dismissal under

---

[3] Counsel for the defendant, Richard Allen, also seeks dismissal alleging a violation of Rule 16, Fed. R. Crim. P., for the government's alleged failure to comply with discovery requests. The alleged failure of which counsel complains is essentially the failure of the government to comply, in a timely and meaningful way, with the order of the undersigned, and the order of Judge Melançon, to disclose unindicted co-conspirators.

the facts of this case, even if the Speedy Trial Act was not violated.

With regard to the defendants' Sixth Amendment right to a speedy trial, the defendants argue that, based on *Barker v. Wingo*, 407 U.S. 514 (1972), the length of delay, the reason for the delay, the defendants' diligence in asserting their speedy trial rights, and the prejudice to the defendants resulting from the trial delay requires dismissal. The defendants note that since the delay from the date of indictment to the date now set for trial exceeds one year, the court is required to perform a *Barker* inquiry. *Doggett v. United States*, 505 U.S. 647 (1992).

The government argues that it has timely, and in good faith, complied with the orders of the Court.[4] Specifically, the government argues that it turned over a co-conspirator witness list on September 18, 2007, and a more narrow co-conspirator witness list on February 15, 2008. Counsel for the government argues that he was only informed, immediately prior to the status conference with the undersigned on January 31, 2008, that the government had been ordered to inform counsel for the defendants of each co-conspirator witness who the government intended to call at trial, and which specific defendant that witness would testify against. Counsel for the government acknowledged that Judge Melançon's order regarding the co-conspirator notification was in his file, and

---

[4] It should be noted that the Assistant United States Attorney who is currently representing the government in this case is not the same Assistant United States Attorney who indicted the case and appeared for the government in the early stages of the case. The Assistant United States Attorney now handling the case did not prosecute the case of *United States v. Colomb*, Docket No. 02-60015.

that he had just overlooked it.[5]

In notifying the defendants of his "more narrow" co-conspirator witness list on February 15, 2008, counsel for the government apparently included qualifying language as follows:

> The United States first notes that this is a conspiracy. As such, each of the witnesses who is testifying about the conspiracy is testifying against your client. The fact that he does not use your client's name does not mean that the witness will not demonstrate the existence of a conspiracy. Each of the witnesses previously given will be testifying against your client *directly or indirectly*. (emphasis added).

[Record Doc. 224, p. 7].

The government denies any violation of the Speedy Trial Act. Basically, the government argues that "other than that time between September 18, 2007 and January 31, 2008" (more than the seventy days within which trial is required by Section 3161(c)(1)), all time is "excludable" under the Act. While the government points out numerous excludable periods under the Act, the government does not detail why it believes each of these excludable periods apply, nor does it identify which periods of time to which each excludable reason applies. In that regard, the government's argument is completely conclusory.[6]

---

[5] The current counsel for the government was not present at the May 16, 2007 status conference.

[6] The only exception is that period which the government argues should be excludable based on the continuity of counsel provision in the Speedy Trial Act.

The government does not address the argument by the defendants that no "on the record" ends of justice determination was made by the Court. Rather, the government apparently takes the position that the majority of the time involved is excludable because there were pending motions which "toll the trial clock indefinitely".[7]

The government further argues that, under *Barker*, there has been no constitutional speedy trial violation because there is no presumption of prejudice. The government notes that less than two years have elapsed since the last defendant was arraigned and that the Fifth Circuit, in *United States v. Frye*, 489 F.3d 201 (5th Cir. 2007), has held that prejudice could not be presumed unless the defense could demonstrate a delay of at least five years. *Id.* at 210.

Furthermore, the government argues that none of the other *Barker* factors weigh in favor of dismissal because the periods of delay were justified, and none of the defendants ever requested a speedy trial and no defendant has, or can, show actual prejudice.

Finally, the government argues that under *United States v. Barboza*, 612 F.2d 999, 1001 (5th Cir. 1980), a trial court's analysis in determining whether dismissal is warranted pursuant to Rule 48 is the same analysis as is required under *Barker*, and that since dismissal is not required under *Barker*, it is not permissible under Rule 48. [Record Doc. 224, pp. 15-16].

---

[7] The government relies on *United States v. Kington*, 875 F.2d 1091, 1108-09 (5th Cir. 1989), for this proposition

# LAW AND ANALYSIS

**The Speedy Trial Act**

Generally, the Speedy Trial Act requires that a defendant be tried within seventy days of his initial appearance in court. 18 U.S.C. § 3161(c)(1). In multiple defendant cases, however, the seventy day period does not commence until the last defendant has made his initial appearance in court. *See United States v. Franklin,* 148 F.3d 451, 455 (5th Cir.1998) and 18 U.S.C. § 3161(h)(7).

Additionally, the provisions of § 3161(h)(1)(F) provide that the time during which motions are pending before the court are excluded from the time limitation. *See United States v. Kington*, 875 F.2d at 1109 ("Pending motions will toll the trial clock indefinitely; there is no independent requirement that the delay attributable to the motions be 'reasonable.'"); *but see United States v. Johnson*, 29 F.3d 940, 943 n. 3 (5th Cir. 1994) ("Within the Speedy Trial Act context, whether certain days are excludable does not depend simply on whether a motion is 'pending.' Instead, a court must look more closely into the particular circumstances of that motion, *e.g.,* whether there was a hearing on the motion, or whether the motion was taken under advisement, to determine whether certain days are excludable.").[8]

---

[8] The Government cites, and relies on, *Kington*, but does not cite the later decision in *Johnson* which obviously clarifies how much delay is "excludable" while motions are pending. Accordingly, the government's reliance on *Kington* for the proposition that *all time* during which a motion is "pending" is "excludable" is incorrect.

Further, excludable delay applicable to any defendant is generally applicable to all defendants. *Franklin*, 148 F.3d at 455 (the excludable delay of one co-defendant may be attributable to all co-defendants). All defendants who are joined for trial generally fall within the speedy trial computation of the defendant who last appears in court, and the excludable delay of one co-defendant may be attributed to all defendants. *United States v. Westbrook*, 119 F.3d 1176, 1186 (5th Cir. 1997) (*citing United States v. Bermea,* 30 F.3d 1539, 1567 (5th Cir.1994), *cert. denied,* 513 U.S. 1156, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995)). Finally, the failure of the defendant to move for dismissal prior to trial constitutes a waiver of the right to dismissal. 18 U.S.C. § 3162(a)(2).

In this case, Judge Melançon, on the motion of the government and without objection by any defendant, granted a continuance, finding that,

> . . . the ends of justice are served because this delay outweighs the best interest of the public and the defendants to a speedy trial. The voluminous documents involved require additional time for discovery reproduction to be effected and the defense counsel to review. . . . The delays necessary for the United States to answer and file motions, for the magistrate to consider the motions, hold any pretrial proceedings, to rule on motions, issue reports and recommendations, and for the parties to engage in and to complete discovery, are necessary . . . . Neither this Court nor the parties under the circumstances outlined in the Government's motion can be expected to prepare effectively for the pretrial and trial proceedings in the time periods stated in 18 U.S.C. § 3161.

[Record Doc. 75].

Additionally, the defendant, James Joseph, moved the Court for a continuance of his trial (which had been set separately from those of his co-defendants) on May 25, 2006.

[Record Doc. 90].   That motion was also granted after a finding by the Court, pursuant to

§ 3161(h)(8)(B)(iv), specifically finding that, after an "ends of justice" analysis pursuant

to § 3161(h)(8)(A), the ends of justice served by granting the continuance outweighed

the best interest of the public and the defendant in a speedy trial.

In *United States v. Edelkind*, 525 F.3d 388, 397 (5th Cir. 2008), the court

recognized that the district court has discretion to accommodate delays, for case specific

needs, where a case is so unusual or so complex that it is unreasonable to expect adequate

preparation and trial within the time limits established by the Speedy Trial Act.   The

court went on to note that finding that the case is complex constitutes a sufficient ground

to satisfy the statutory requirement for a continuance.  Judge Melançon specifically found

that the continuance was required, and met the ends of justice test, because of the

complexity of the case.   This finding is sufficient to justify the continuance and to

exclude, from Speedy Trial Act calculations, the period of the delay.  This procedure is

clearly permissible.  *Zedner v. United States*, 126 S.Ct. 1976, 1989 (2006).

The defendants argue, apparently, that a finding that the ends of justice is best

served by a continuance must be made after a contradictory hearing. The defendants cite

no authority for that proposition, and the plain language of the statute belies their

position. Section 3161(h) simply requires that a continuance based on an ends of justice

analysis must be set forth "in the record of the case either orally or in writing." There is

no requirement for a contradictory hearing.   Again, no defendant objected to the

continuance and no defendant requested a contradictory hearing.

Indeed, the court is free to grant the continuance without contemporaneously providing its reasons. In *Zedner,* the court recognized that although the Act was clear that the requisite finding had to be made, it was unclear on precisely when the findings had to be "set forth in the record of the case." *Id*. at 1989.  The required findings were made on the record, in writing, here; no more is required. *See also United States v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002) ("Rather than contemporaneous findings, section 3161 merely requires that a district court enter on the record, at some point (presumably prior to trial), the necessary findings to support an ends-of-justice continuance.").

Furthermore, as the government points out, one of the factors for the court to consider in granting an ends of justice continuance is continuity of counsel. In this case, tragically, counsel for one of the defendants was seriously injured in October, 2007. When the undersigned met with counsel on January 31, 2008 to set a trial date, that counsel requested that the trial not be set earlier than the late summer or fall of 2008.  All counsel were either present, or waived their appearance, at that status conference. No counsel objected to the current trial date; no counsel requested a hearing. While, technically, a continuance had already been granted at this point, it was clear that, based on the consideration of the continuity of defense counsel, no trial could be set earlier. Section 3161(h)(8)(B)(iv).

Accordingly, the continuance of the trial and the date of its resetting did not violate the Speedy Trial Act. The delay in the commencement of trial until October 14, 2008 is excludable based on the findings made by Judge Melancon on May 9 and May 30, 2006. The defendants' motions to dismiss on Speedy Trial Act grounds should, therefore, be denied.

**Sixth Amendment right to speedy trial**

The defendants have also moved to dismiss the indictment for violation of their Sixth Amendment rights to a speedy trial. This is a constitutional right, and is thus different from the rights provided by the Speedy Trial Act. The right to a speedy trial is, of course, guaranteed by the Sixth Amendment. *Barker v. Wingo*, 92 S.Ct. at 2187. As the Court said in *Barker*, the right to speedy trial is a more vague concept than other procedural rights and it is impossible to determine with precision when the right has been denied. How long is too long in a system where justice is supposed to be swift but deliberate? *Id.* at 2187.

In *Doggett v. United States*, *supra*, the court qualified the sweep of the Constitutional speedy trial right by specifically recognizing the relevance of four separate inquiries: (1) whether delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as a result of the delay. *Id.* 112 S.Ct. at 2690.

A one year delay between the onset of the prosecution and trial is enough to trigger a full *Barker* analysis. *United States v. Frye*, 372 F.3d 729, 736-37 (5th Cir. 2004).[9] The "full *Barker* analysis" requires the court to look to the first three factors (delay-length, reason for the delay and the diligence in asserting the right) in order to determine whether prejudice will be presumed or whether actual prejudice must be shown. *Id.* at 736. Prejudice may be presumed when the first three factors weigh "heavily" in the defendant's favor. *United States v. Fernandez,* 457 F.3d 416, 421 (5th Cir. 2006). The longer the delay, the greater the presumption of prejudice. *United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002), *citing Doggett*, 112 S.Ct. at 2686. If prejudice is presumed, or actually sustained by the defendant, the government can overcome that by "show[ing] that the presumption is extenuated . . . or rebu[tting] the presumption with evidence". *United States v. Serna-Villarreal*, 352 F.3d 225, 231 (5th Cir. 2003).

In *Frye I*, the court, citing *Barker*, noted that the Sixth Amendment was designed to protect three interests of the defendant: (1) to prevent oppressive pretrial incarceration, (2) to minimize the defendant's anxiety and, (3) to limit the possibility of the defendant's defense being impaired. Prejudice, *vel non,* the last of the four factors used for balancing and deciding whether the right has been violated, is to be evaluated in the light of these interests. *Id.* at 736.

---

[9]Hereafter referred to as "*Frye I*".

Since it has been more than one year since the defendants' first appearance in court, and since trial has not yet commenced, a full *Barker* analysis is required.

**1. Length and reasons for the delay**

*Dogett* recognizes that "pretrial delay is often both inevitable and wholly justifiable", and that the extent to which this delay is justified necessarily varies with the complexity of the case. *Id.*,112 S.Ct. at 2693. Thus, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 92 S.Ct. at 2192-93.

Here, this is a relatively complex case with eight defendants. Some of the defendants did not live in this area and, accordingly, were delayed in making their initial appearances in this Court. Detention hearings were required, a motion to suppress was tried and ruled on and the length of time that the alleged conspiracy existed was very long. Nevertheless, it appears, from the record, that if the government had complied with the undersigned's order of June 21, 2006, made in open court, in which the government was required to furnish to the defendants the names of co-conspirators which the government intended to call as witnesses at trial, that the trial could have started, as scheduled, on May 16, 2007. Thus, it appears from the record that the reason that the trial had to be continued at that time was the failure of the government to comply with the undersigned's order.

It does not appear reasonably likely that the case was, after this continuance, able to be tried prior to early October 2007, when counsel for one of the defendants was seriously injured. Thereafter, the earliest the case could be tried was the October, 2008 trial date which is currently pending.

The indictment in this case was returned March 15, 2006. The last defendant to appear in this Court did so on November 22, 2006. [Record Doc. 124]. Accordingly, less than two years have passed since the last defendant made his initial appearance in this Court. In this circuit, the length of delay will generally not create a presumption of prejudice unless the post-indictment delay lasts at least five years. *Frye I*, 372 F.3d at 737, (*citing Serna-Villarreal*, 352 F.3d at 232).

After a careful review of the record, the undersigned finds that this factor neither predominates in favor of the government nor in favor of the defendants.

## 2. Assertion by the defendant of his right to a speedy trial

No defendant has ever requested a speedy trial in this case. No defendant has ever moved to have the court set the case for trial. No defendant has ever objected to any continuance of the trial date. No defendant has ever objected to the court's finding that the case was "complex", nor that the "ends of justice" continuance was unwarranted. No defendant has ever asked for a hearing, nor moved to have the continuance order vacated. In short, prior to the time that these motions were filed, there was *absolutely no* assertion by any defendant of his right to a speedy trial. Indeed, no defendant, to date, has ever

requested a speedy trial.

It is clear that, in this circuit, simply requesting that a case be dismissed on Sixth Amendment grounds is an insufficient assertion of the right to a speedy trial. *United States v. Frye*, 489 F.3d 201 (5th Cir. 2007).[10]  In *Frye II*, the court said,

> By focusing on the remedy, Frye loses sight of the right. The right, in this case, is the right to a speedy trial. An assertion of that right is a demand for a speedy trial, which will generally be an objection to a continuance or a motion asking to go to trial. At the very least, a defendant's assertion of his speedy trial rights should manifest "his desire to be tried promptly." *United States v. Litton Sys., Inc.,* 722 F.2d 264, 271 (5th Cir.1984). Frye's repeated motions for dismissal . . . are not an assertion of the right, but are an assertion of the remedy. A motion for dismissal is not evidence that the defendant wants to be tried promptly.

*Id*. at 211-12.

The Court's holding in *Frye II* effectively forecloses the defendants' argument on this factor.  Based on *Frye II*, no defendant has ever requested a speedy trial in this case. Accordingly, this factor heavily predominates in the government's favor, and against dismissal.

## 3.  Actual prejudice

Because the delay in commencing trial has been less than five years, no prejudice is presumed.  *Frye I*, 372 F.3d at 737 (*citing Serna-Villarreal*, 352 F.3d at 232).

The defendants can point to no specific prejudice in this case.  Rather, the defendants argue that prejudice should be presumed because the other factors

---

[10]Hereafter referred to as "*Frye II*".

predominate in favor of dismissal. [Record Doc. 192, p. 12]. However, the undersigned has found that the other factors *do not* predominate in favor of dismissal. The defendants argue the "very real possibility" that the passage of time will impair their ability to defend the case because of the potential loss of exculpatory evidence and the possibility that memories may grow dim. As the government accurately points out, the defendants have failed to prove any actual prejudice. Mere "possible prejudice" is insufficient.[11]

The undersigned concludes, after a review of each of the *Barker* factors, that no Sixth Amendment violation has occurred in this case, and, therefore, the defendants' motion to dismiss on Sixth Amendment grounds should be denied.

## 3. Rule 48, Federal Rules of Criminal Procedure

The defendants argue that Rule 48 operates independently of the Speedy Trial Act, and provides an alternative basis for the Court to dismiss an indictment even if the Speedy Trial Act is not violated. The defendants argue that Rule 48(b) vests the court with broad discretion to manage its docket and impose a wide range of sanctions against parties who violate the court's orders.

The government, on the other hand, argues that in *United States v. Barboza*, 612 F.2d 999 (5th Cir. 1980), the Fifth Circuit held that the court's duty under Rule 48 is "the same as when determining if there has been a violation of the Sixth Amendment." *Id.* at

_____

[11]It is true that two of the defendants remain detained. Given the recommendation made by the undersigned below, this prejudice is attenuated and will be remedied assuming that this Report and Recommendation is adopted by the District Judge.

1001.  The government then goes on to argue that if there is no Sixth Amendment

violation under *Barker*, then dismissal under Rule 48 is not warranted.

The government is incorrect.  In *United States v. Garcia*, 995 F.2d 556 (5th Cir.

1993), the court recognized that it had previously held that Rule 48(b) does not *require*

dismissal absent a Sixth Amendment violation.  That is not to say, however, that a Rule

48(b) dismissal is allowed *only when* a Sixth Amendment violation is found.  The court in

*Garcia* noted that the District Court has extremely broad discretion regarding whether to

dismiss under Rule 48(b), and, in that regard, cited approvingly the court's prior decision

in *United States v. Novelli*, 544 F.2d 800 (5th Cir. 1977).

In *Novelli*, the court said,

> Under that rule [Rule 48(b)] the court must dismiss with prejudice for a
> constitutional violation.  Rule 48(b) . . . *is more stringent than the
> constitutional approach and is not confined to constitutional violations but
> also embraces the inherent power of the court to dismiss for want of*
> prosecution.  Wright, Federal Practice and Procedure (Criminal) § 814, pp.
> 318-19.  *Inarguably the power of the court under 48(b) includes at least a
> power to dismiss without prejudice because of delay not rising to the level
> of a constitutional violation.  Arguably 48(b) authorizes dismissal with
> prejudice for such a delay*.  (emphasis added).

*Id*. at 803.

In *United States v. Anderton*, 752 F.2d 1005 (5th Cir. 1985), the Fifth Circuit also

noted:

> In the absence of direction in the Speedy Trial Act itself, a defendant's right
> to dismissal might be found in the Sixth Amendment *or* in Fed. R. Crim. P.
> 48(b) (discretionary dismissal for unnecessary delay).  In either event,
> however, it is clear that dismissal is warranted *only* upon a showing of

sufficient prejudice caused by the violation of § 3161(j)(1) or, *perhaps*, a *showing of improper prosecutorial motive. See United States v. Litton Systems, Inc.,* 722 F.2d 264, 270-72 (5th Cir. 1984); *United States v. Hendricks,* 661 F.2d 38, 42-43 (5th Cir. 1981); *United States v. Greer*, 655 F.2d 51, 53-54 (5th Cir. 1981). (emphasis added).

*Id*. at 1008.

Finally, in *United States v. Balochi*, 527 F.2d 562 (4th Cir. 1976) the Fourth Circuit

held that,

Under Rule 48(b) the district court was vested with authority to dismiss an indictment if there was "unnecessary delay in presenting the charge to a grand jury," or "in bringing a defendant to trial." *This authority supplements the district court's obligation to dismiss indictments in order to protect a defendant's constitutional rights, and it is broader in compass*. We think that on the facts that the record reflects, the district court acted well within its discretion in dismissing this indictment with prejudice on both grounds authorized by the rule. (emphasis added)

*Id.* at 563.

Based on the above, the undersigned finds that this Court has discretion under

Rule 48(b) to dismiss an indictment without prejudice, even if the court does not find a

constitutional violation. Unfortunately, the undersigned has been unable to locate

specific authority which the Court can use for guidance in determining whether or not a

Rule 48(b) dismissal is appropriate under the facts of this case.

Based on the record in this case, and specifically on the failure of the government

to comply with the order of the undersigned to disclose the names of unindicted co-

conspirators who the government intended to call as witnesses at trial, and, further, on the

failure of the government to comply with the order of Judge Melançon to make timely

and complete disclosure of the names of unindicted co-conspirators who were to testify at trial for over five months, the undersigned is compelled to recommend that this case be dismissed without prejudice because the government caused unnecessary delay in bringing this case to trial.

There is no question but that the government completely ignored the order of the undersigned, issued in open court June 21, 2006.  That order required the government to identify co-conspirators who were going to be government witnesses as soon as the government determined that an unindicted co-conspirator would be called as a witness, but, in no event, later than twenty-one days before trial.   This the government failed to do. Had the government done so, there is nothing in this record to indicate that trial could not have commenced, as scheduled, on June 18, 2007.

The government's failure to comply with the order of the undersigned was then exacerbated by the government's delay of five months in complying with Judge Melançon's order of June 18, 2007.

The government has never provided any reason for its failure to comply with this Court's orders. The current Assistant United States Attorney handling this case quite candidly acknowledged that he had simply failed to see Judge Melançon's order in his file.   The undersigned has no reason to doubt the word of counsel for the government, with whom the undersigned has had numerous dealings in the past, both while the undersigned has been on this bench, and when the undersigned was engaged in the private

practice of law.  The undersigned has always found counsel for the government to be honest and candid in his dealing with the undersigned.   However, the government is charged with the knowledge of those orders which are entered in a case, whether or not counsel changes.

Current counsel for the government, of course, cannot speak to the actions, or, in this case, the in-actions, of his predecessor.  Nevertheless, the government is bound to comply with the orders of this Court, and, when it fails to do so, without adequate explanation, it subjects itself to sanctions.

It would be unfair and unwarranted, to personally sanction the present counsel for the government; former counsel for the government is no longer employed as an assistant United States attorney, and, therefore the undersigned declines to recommend personal sanctions against him. Rather, the undersigned finds that the only appropriate sanction in this case is the dismissal of the indictment without prejudice.

The undersigned is not unmindful that the sanction of dismissal is severe and should be used sparingly. The undersigned is also aware, however, that the orders of this Court must be followed, and that the failure to follow this Court's orders must have consequences.   Here, the failure to follow the order of the undersigned apparently resulted in a trial delay of about sixteen months.  That delay is chargeable to the government because the government failed to comply with the orders of this Court. Therefore, under the circumstances of this case, the undersigned recommends that this

indictment be dismissed, without prejudice, for violation of Rule 48(b), Fed. R. Crim. P.[12] [13]

Accordingly, it is the recommendation of the undersigned that the motions to dismiss the indictment pending herein for violation of Rule 48, Fed. R. Crim. P. be **granted**, and that the pending indictment be **dismissed without prejudice**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79**

---

[12] While the court may have the inherent authority under Rule 48(b) to dismiss a case with prejudice, the defendants have failed to show any actual prejudice which they have sustained as a result of the delay of the trial. In the absence of such actual prejudice, the undersigned does not believe that this case should be dismissed with prejudice.

[13] The undersigned expresses neither approval nor disapproval of the language used by the government in its notice to the defendants of which unindicted co-conspirators would likely testify at trial. The undersigned notes that any confusion or ambiguity in the government's notice might well have been clarified at the scheduled *James* hearing.

**F.3d 1415 (5th Cir. 1996).**

September 4, 2008, Lafayette, Louisiana.

_C. Michael Hill_

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE